## McCreary's Appeal.

1. A fi. fa. was issued on a judgment and land levied on, the defendant waiving an inquisition and making no claim for exemption; fi. fas. were issued afterwards on two other judgments, levies made and exemption claimed: writs of vend. ex. were issued in each case, and the land sold under the three at the same time. *Held*, that each execution was as much the instrument of the sale as the others and the defendant was entitled to his exemption.

2. The first fi. fa. was on a judgment subsequent to the judgment of the second fi. fa., and the third fi. fa. on a judgment subsequent to both; *Held*, that the defendant was entitled to his exemption only as against the third judgment, his omission to claim under the second judgment precluding him from any claim against the first.

3. Line's Appeal, 2 Grant 197, distinguished.

May 28th 1873.   Before READ, C. J., AGNEW, SHARSWOOD, WILLIAMS and MERCUR, JJ.

Appeal from the Court of Common Pleas of *Adams county*: No. 82, of May Term 1873.

In the distribution of the proceeds of sheriff's sale of the real estate of Samuel McCreary, William McCreary, Sarah McCreary and Martha McCreary.

The four McCrearys, being owners of a farm as tenants in common, John Barnitz, on the 10th of November 1852, recovered against them a judgment for $586.57.   On the 10th of December 1865, Samuel and William became the owners of a tract of woodland, and on the 1st of April 1867, Abraham Keagy recovered a judgment against Samuel, William and Martha for $780. Barnitz's judgment was revived July 31st 1862, and again July 20th 1867.   John Runkel recovered a judgment against the four McCrearys, August 31st 1863, for $600, revived August 24th 1868, and Andrew Rudisil recovered a judgment against the four McCrearys, April 11th 1868, for $500, and another subsequently in the same month for $625.   The liens of the foregoing judgments were continued by revivals in the same order, at the sheriff's sale, from which the fund for distribution arose.

Therefore, then, Barnitz had the first lien on the farm, and the second on the woodland.

Keagy had the second lien on three-fourths of the farm, and the first on the woodland.

Runkel had the second lien on a fourth of the farm, the third lien on the three-fourths of the farm and on the woodland.

Rudisil's lien was the last, and covered the farm and woodland.

On the 5th of January 1871, to August Term 1868, Runkel issued a fi. fa. on his judgment.   The sheriff levied on the farm, but did not levy on the woodland.   The defendants waived an inquisition.   There was no claim under this writ by the defendants for exemption.

On the 11th March 1872, to April Term 1872, Rudisil issued a fi. fa. on his first judgment.   Under this writ the sheriff levied on the farm and woodland.   The defendants claimed their

[McCreary's Appeal.]

exemption and demanded an appraisement.   The sheriff returned that an appraisement had been made, finding that the land could not be divided.

On the 30th of March 1872, to April Term 1872, Keagy issued a fi. fa. on his judgment, the sheriff levied upon the interest (three-fourths) of the defendants in his judgment, in the farm and on the woodland.   The defendants claimed their exemption, and the sheriff made the same return as under Rudisil's writ.

Writs of venditioni exponas were issued by Runkel, Rudisil and Keagy, and both tracts sold under them June 8th 1872.   The farm sold for $2451; the woodland for $350.50.

The fund being brought into court, M. W. Jacobs, Esq., was appointed auditor to report distribution.

The only contested question before him arose on the claims of the defendants for $300 each under the exemption laws.

The auditor allowed to William and Samuel the proceeds of the woodland, it not having been levied on under Runkel's execution, and they having made their claims under the first execution under which it was levied on.

These claims having exhausted the proceeds of the sale of that land, the distribution was confined to the proceeds of the farm.

As to that the auditor reported :—

* * * "The second point affects the farm-fund and is the position advanced in behalf of the defendants generally, viz. : that a distinction must be taken between an actual waiver of the benefit of the exemption law, and a mere omission to claim it; that, whilst the former is in contravention of the spirit of the law, which was intended for the personal benefit of the unfortunate debtor, and the comfort of his family. and not to give to one creditor any undue advantage over another, the latter, resulting most frequently from the ignorance or misfortune of the debtor, is not to be so harshly construed; that the defendants, not having actually waived the benefit of the exemption, as against Runkel, but merely having omitted to claim it, against his writ, whilst they are not entitled to take anything from this fund, as against Runkel, are entitled to take as against the other lien creditors. * * * But, however, well founded this distinction might be in theory, or in its application to other cases, your auditor fails to perceive how it can affect this distribution.   The fund arising from the sale of the farm came into court on the Runkel execution, as well as on the writs of Rudisil and Keagy.   The defendants made no claim to the benefit of the exemption law against that execution, and consequently can have no claims upon the fund.   In Line's Appeal, 2 Grant's Cases 197, the Supreme Court say, per Strong, J. : 'The statutory privilege not being an exemption, but a right to obtain one, in a designated manner, if the debtor would secure it he must comply with the conditions, and one of them is that the appraisement shall

be requested under the execution, which is the direct instrument of sale.'

" Here Runkel's execution was the direct instrument of sale, and the defendants under that execution did not even, as appears from the sheriff's return, claim the benefit of the exemption, much less demand an appraisement."

The auditor, after citing several cases, proceeded:—

"Applying the doctrine contained in the above cases, your auditor is compelled to disallow entirely the claims of Martha and Sarah McCreary to exemption out of the funds in court, and to disallow the claims of William and Samuel McCreary, so far as they concern the fund arising from the sale of the farm."

He then reported a distribution, allowing Barnitz's, Keagy's and Runkel's claims in full, and appropriating the balance of the funds, $165.08, to Rudisil's first judgment.

After exceptions, the court (Fisher, P. J.) confirmed the report of the auditor, and the McCrearys appealed to the Supreme Court, assigning the decree of confirmation for error.

*R. G. McCreary*, for appellants.—A waiver of a claim for the exemption by omission has not the same effect as an express waiver : Bower's Appeal, 18 P. F. Smith 126.

*McClean & Woods* and *D. Wills*, for Runkel and Keagy, appellees.—A debtor must make his election at the time of the levy : Hammer *v.* Freese, 7 Harris 255. Waiving the inquisition without claiming the exemption, waives the right : Bowyer's Appeal, 9 Harris 212 ; Brant's Appeal, 8 Id. 141. The claim must be made in the case which is the instrument for effecting the sale : McAfoose's Appeal, 8 Casey 276. The claim must be against every execution : Strouse *v.* Becker, 2 Wright 190 ; Dodson's Appeal, 1 Casey 232 ; Line's Appeal, 2 Grant 197 ; Weaver's Appeal, 6 Harris 307.

There was no paper-book for Rudisil.

The opinion of the court was delivered, July 2d 1873, by

WILLIAMS, J.—If the sale had been made on Runkel's execution alone, there would be nothing to distinguish this case from Line's Appeal, 2 Grant's Cases 197 ; but it was not. It was made on the executions of Keagy and Rudisil, as well as that of Runkel. The lien of Keagy's judgment was *prior to that of* Runkel, and his execution was first issued. Runkel's execution, therefore, was not the direct instrument of sale. If it had not been issued, the property would have been sold on the other executions. In this respect the case is distinguishable from Line's Appeal. In that case there was no claim for the benefit of the Exemption Law, and no appraisement was demanded on the execution on which the sale was made. But here the benefit of the exemption was claimed,

and appraisement was made on two out of the three executions on which the property was sold. As against Runkel, the appellants are not entitled to the exemption by their failure to demand it. But as between Runkel and Keagy, the latter is entitled to have his judgment first satisfied out of the proceeds of sale, and his right to satisfaction cannot be postponed or defeated by the appellants' waiver of exemption in favor of the former. The appellants, therefore, are not entitled to any portion of the proceeds as against either. But why are they not entitled to the exemption as against Rudisil, whose judgment is subsequent to Keagy's and Runkel's? They claimed it as against Rudisil. Their failure to claim it as against Runkel did Rudisil no harm. It placed him in no worse position than if they had demanded its benefit as against Runkel. If the sale had been made only upon the executions of Keagy and Rudisil, there can be no doubt that, as against the latter, the appellants would be entitled to the exemption. Why should their failure to demand appraisement on Runkel's execution deprive them of a right which they would otherwise have had? What equity has Rudisil to claim that the failure shall inure to his benefit? It did him no harm. As against him the appellants were guilty of no laches in making their claim. Why, then, should it not be allowed? It seems to us that their failure to demand appraisement as against Runkel did not work a forfeiture of their right to demand it as against Rudisil, and therefore they are entitled to the exemption as against him. But they can only come on the residue of the fund after paying the prior judgments, and as it is not sufficient to satisfy the claims of all the appellants, how shall it be distributed? Manifestly Sarah McCreary is in equity entitled to the whole of it; the interests of the other appellants in the proceeds of sale having been exhausted in paying the prior judgments. The residue of the fund must therefore be appropriated to the claim made by Sarah McCreary to the exemption to which she is entitled under the law.

And now, July 2d 1873, It is ordered, adjudged and decreed that the decree in this case be reversed and set aside as to Andrew Rudisil, and that the balance of the proceeds of sale, amounting to one hundred and sixty-five dollars and eight cents, applied to the payment of his judgment (No. 228, January T. 1868) against the appellants, be appropriated to the claim of Sarah McCreary, one of the appellants, to the exemption to which she is entitled under the law; and it is further ordered that the appeal of the other appellants be dismissed at their costs, and that the costs incurred by the appeal of Sarah McCreary be paid by Andrew Rudisil, the appellee.